UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JIMMY PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:07-CV-015-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Jimmy Patterson seeks judicial review of a decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Patterson did not consent to the jurisdiction of the United States Magistrate Judge. Pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.    Facts**

Patterson was diagnosed with Human Immunodeficiency Virus (HIV) in September 2001 and peripheral neuropathy secondary to HIV in December 2002. (Tr. 125, 269, 271.) Patterson applied for DIB on November 7, 2003. (Tr. 65-67, 98.) He indicated

in application documents that he suffered from neuropathy in his feet and in his left leg and that he experienced swelling in his legs and testified that he was unable to work because of back pain, depression, and neuropathy. (Tr. 78, 88, 98, 600.)

The Administrative Law Judge (ALJ) held a hearing and determined at step five of the sequential disability analysis[1] that Patterson was not disabled because he retained the ability to perform limited light work with a sit/stand option and could work as an assembly press operator, a silver wrapper, and a small products assembler. (Tr. 24) The Appeals Council denied Patterson's request for review, (Tr. 4-6), and the ALJ's decision became the Commissioner's final decision for purposes of judicial review, *see Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

## II.  Judicial Review

The Social Security Act authorizes judicial review of the Commissioner's final decision to determine: (1) whether the Commissioner's final decision is supported by substantial evidence; and (2) whether the decision is consistent with applicable legal standards. 42 U.S.C. § 405(g). Reviewing courts cannot second guess the Commissioner's finding of facts when those findings are supported by substantial evidence. *See Hughes v. Shalala,* 23 F.3d 957 (5th Cir. 1994). Substantial evidence is evidence that a "reasonable

---

[1] The Commissioner considers the applicant's claim under a five-step sequential analysis. 20 C.F.R. § 416.920 (2007); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the five-step sequential evaluation the claimant bears the burden of proof on the first four steps. 20 C.F.R. § 404.1520. At the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing jobs that exist in substantial numbers in the national economy. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citation omitted). Once the Commissioner makes this finding, the burden of proof returns to the claimant to rebut the finding. *Id.*

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389 (1971).

## III. Discussion

### A. *Patterson's Points of Error*

Patterson claims the ALJ erred as a matter of law at step three of the sequential disability analysis because he failed to consider whether his peripheral neuropathy met the criteria of Listing 14.08(H)(2) in the Commissioner's regulations. Alternatively, he claims the ALJ committed reversible error by failing to analyze whether he was disabled under Listing 14.08(H)(2).[2]

### B. *Patterson has not shown with medical findings that his HIV and peripheral neuropathy met the criteria of Listing 14.08(H)(2)*

The claimant bears the burden of proof at step three of the sequential analysis. To satisfy this burden, the claimant must produce medical findings that support each of the criteria of the listing at issue. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). If the ALJ determines that the claimant has met this burden and that the medical severity of the claimant's impairment meets or equals the criteria of one of the listed impairments in appendix

---

[2] It should be noted that Patterson cites to §14.07(H)(2) and that this is an apparent typographical error. Listing 14.07 addresses "immunoglobulin deficiency syndromes or deficiencies of cell-mediated immunity, excepting HIV infection." 20 C.F.R. part 404, subpart P, appendix 1 § 14.07. Because Patterson alleges disability because of HIV and neuropathy, Listing 14.07 is not relevant to this case. In addition, there is no subsection (H)(2) for Listing 14.07. Listing 14.08, on the other hand, addresses HIV infection and subsection (H)(2) addresses neuropathy. *See* 20 C.F.R. part 404, subpart P, appendix 1 § 14.08(H)(2).

3

1 of subpart P in the Commissioner's regulations, disability is presumed and the evaluation ends in the claimant's favor. 20 C.F.R. § 416.920(d); *see Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000).

Listing 14.08(H)(2), the listing at issue in this case, addresses HIV infection with neurological abnormalities and is found under § 14.00 of the listings. The task of determining whether a claimant's impairments meet the criteria of Listing 14.08(H)(2) requires the reviewer to navigate through the criteria of a number of listings. The reviewer must first turn to § 14.00, which addresses disorders and illnesses involving the immune system. 20 C.F.R. part 404, subpart P, appendix 1 § 14.00. Under § 14.00, Listing 14.08 addresses HIV infection. In order to show that the claimant's HIV meets the criteria of Listing 14.08, the medical records must include documentation of HIV infection and findings that satisfy the criteria of a sub-part under § 14.08. 20 C.F.R. part 404, subpart P, appendix 1 §§ 14.00D, 14.08. Patterson relies on sub-part (H)(2), which requires documentation of neurological manifestations of HIV infection such as peripheral neuropathy as described under § 11.00, the listed impairments involving neurological illnesses and disorders. 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.08(H)(2). Patterson and the Commissioner agree that under § 11.00, the medical records must demonstrate "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dextrous movements, or gait and station." *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.04(B). The Commissioner does not contest Patterson's claim that the medical evidence

4

documents HIV. Therefore, the issue is whether the medical evidence demonstrates significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dextrous movements or in gait and station.

Patterson claims the evidence shows that he experienced frequent falls stemming from peripheral neuropathy and used a cane to walk despite treatment with medication. He also points to a record from a physical therapist who noted that "[Patterson] overall guards and protects the left lower extremity during gait." (See Tr. 360.) He also claims his treating sources noted that he exhibited decreased strength, sensory loss, and muscular atrophy.

Patterson's claims must be rejected. The evidence regarding Patterson falling does not demonstrate that he suffered from problems that can be described as "significant and persistent." On August 11, 2003, Patterson reported that he experienced problems with his left knee collapsing. (Tr. 295-96.) However, he also reported that his left knee had collapsed only twice in a one-month period. According to an examination note from his physician, in one instance, Patterson was walking backwards upstairs when his "knee just buckled." (Tr. 296.) The physician noted that Patterson's knee had not felt unstable at any other time while walking and that "[h]e has only had problems on these 2 occasions." *Id*. A little more than one month later, on September 23, 2003, Patterson reported that he had fallen twice more because of problems with his left knee, and he reported that he fell during the last week in October 2003. (Tr. 360, 362.) Patterson underwent physical therapy for strengthening and his physician noted that there was a decrease in the incident of knee buckling on the left side.

5

(Tr. 295-96, 362-63.) The records do not contain further reports of problems with Patterson's left knee that would support a conclusion that the problems he experienced were "significant and persistent." In addition and significantly, the records related to the falls Patterson sustained indicate that they were a result of problems in his left knee only. (Tr. 360, 362.) In order to show that he met the criteria of Listing 14.08(H)(2), Patterson must produce evidence of "[s]ignificant and persistent disorganization of motor function in *two extremities*, resulting in sustained disturbance of gross and dextrous movements, or gait and station." 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.04(B) (emphasis added).

Patterson's claim that he used a cane does not support a conclusion that the problems he experienced were "significant and persistent." The medical records include notations of Patterson using a single-tip cane. (Tr. 278, 288-89, 307, 360, 540.) However, he was able to stand and walk while using the cane. (Tr. 307, 540.) And at some point Patterson stopped using the cane. He did not have a cane at the hearing in January 2006 and he testified that he "got rid of the cane." (Tr. 604.)

Patterson's cite to the physical therapist's note does not demonstrate that he experienced significant and persistent disorganization of motor function resulting in disturbance in gait and station. Although the physical therapist noted that Patterson "overall guards and protects lower left extremity during gait," she also noted that Patterson's transitional movements were smooth and coordinated, that transfers were within normal limits, that he exhibited strength in the range of 4/5 to 5/5 in his legs, and that range of motion in the lower extremities was within normal limits with the exception of decreased

6

flexion and hamstring flexibility. (Tr. 360.)

Not only does the medical evidence not demonstrate that Patterson's impairments met the criteria of Listing 14.08(H)(2), Patterson's testimony regarding his symptoms and his daily activities belies his claim. He testified that he experienced pain and swelling in his legs, but he did not allege limitations in his gait and station or disorganization of motor function. (*See* Tr. 600-01.) And his testimony demonstrates that although he experienced swelling and pain after extended standing, he was not significantly impaired in his ability to use either his upper or lower extremities. He testified that on an average day he makes coffee, goes walking around his block and neighborhood for twenty to twenty-five minutes, sits outside, reads, does yard work such as raking leaves, takes out the trash, does light housework, and helps take care of his partner's invalid mother. (Tr. 602.) In addition, his testimony regarding his ability to work undermines his claim. The ALJ asked Patterson whether he could work a job that would allow him to sit and stand and change positions at his option and that would not require lifting heavy objects. (Tr. 604.) Patterson stated, "If I could find something like that I would." *Id*.

The claimant bears the burden of producing medical findings that support each of the criteria of a listing in order to be found disabled at step three of the sequential disability analysis. *Selders*, 914 F.2d at 619. Patterson did not meet this burden. In addition, Patterson's testimony provides substantial support for the ALJ's decision and demonstrates that he did not experience symptoms serious enough to meet the criteria of Listing 14.08(H)(2).

C. *The ALJ's failure to discuss whether Patterson's impairments met the criteria of Listing 14.08(H)(2) does not require remand*

Patterson complains that the ALJ mentioned Listings 12.04 and 12.06, listings for affective and anxiety disorders, but did not make findings concerning Listing 14.08(H)(2). He argues the Social Security Act requires the ALJ to state the factual basis for concluding that a relevant listing does not apply to the claimant's case.

The ALJ did not specifically address whether Listing 14.08(H)(2) was applicable or whether Patterson met the criteria of the listing, but his omission does not require remand. The Fifth Circuit Court of Appeals recently addressed this issue in *Audler v. Astrue*, – F.3d – , 2007 WL 2745001 (5th Cir. Sept. 21. 2007). In *Audler*, the court reviewed a decision in which the ALJ "summarily concluded" at step three of the sequential disability analysis that "[t]he medical evidence indicates that the claimant has status post lumbar laminectomy, cervical disc herniation, headaches, and back pain, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." *Audler* at *1. The court noted that the ALJ did not identify the listed impairment for which the claimant's impairments did not qualify and did not provide any explanation as to how she determined that the claimant's symptoms did not meet the criteria of any listing; the court noted that "[s]uch a bare conclusion is beyond meaningful judicial review." *Id*. Citing 42 U.S.C. § 405(b)(1), the court held that the explicit terms of the Social Security Act direct the ALJ to discuss evidence offered in support of the claimant's claim and explain why

8

the claimant was not found disabled at step three. *Audler*, at *2. The court indicated, however, that such an omission would constitute harmless error rather than reversible error so long as the claimant's substantive rights were not affected. *See id*. ("[h]aving determined that the ALJ erred in failing to state any reason for her adverse determination at step 3, we must still determine whether this error was harmless.") (citation omitted).

The holding in *Audler*, therefore, requires the reviewing court (1) to evaluate whether the ALJ failed to support his step three determination with a discussion of the relevant evidence and (2) to determine whether the ALJ's error was harmless. *Audler*, at *1-2. Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, the ALJ's discussion at step three of the sequential disability analysis was conclusory and similar to that of the ALJ in *Audler*. (Compare Tr. 17 and *Audler,* at *1.) The ALJ merely stated that Patterson did not "have an impairment or combination of impairments that are listed in, or that equal in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 17.) The ALJ's lack of discussion at step three, however, was harmless error and does not necessitate remand. As the discussion in this Report and Recommendation demonstrates, substantial evidence supports a conclusion that Patterson's impairments did not meet the criteria of Listing 14.08(H)(2) and remand for the purpose of requiring the ALJ to provide a discussion as to whether Patterson's impairments met the criteria of the listing would not change this conclusion. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (remand not required in cases in which the ALJ

would not have reached a different conclusion in the absence of error).

## IV. Conclusion and Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Patterson's appeal with prejudice.

## V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: October 11, 2007.

NANCY M. KOENIG
United States Magistrate Judge